IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

GARY ALAN GLASS,

        Plaintiff,

        v.

ANNE ARUNDEL COUNTY, *et al.*,

        Defendants.

CIVIL NO.: WDQ-12-1901

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Gary Alan Glass sued Anne Arundel County (the "County") and various Anne Arundel County Police Department ("AACPD") employees[1] (collectively, the "Defendants") for civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986. Pending are several motions.[2] For the following reasons, Davis, Gilmer, Ryder, and Fraser's motion to dismiss[3] will be granted; the

---

[1] The other named Defendants are Police Officer Mark Collier; Chief of Police James E. Teare, Sr.; Lieutenant James Scott Davis; Sergeant John Gilmer; Central Records Manager Christine Ryder; and Central Records Deputy Manager Brenda Fraser. ECF No. 1. Glass also sued Unknown County Employee X. *Id.*

[2] The Defendants have moved to bifurcate and stay discovery (ECF No. 12) and to strike portions of the complaint (ECF No. 13). Defendants Davis, Gilmer, Ryder, and Fraser have moved to dismiss or, in the alternative, for summary judgment (ECF No. 11).

[3] Davis, Gilmer, Ryder, and Fraser captioned the motion as a motion to dismiss or, in the alternative, for summary judgment. ECF No. 11. The motion will be treated as a motion to dismiss; the Court will consider the pleadings, matters of public record,

Defendants' motion to strike will be denied; and the Defendants' motion to bifurcate and stay discovery will be granted in part and denied in part.

I. Background[4]

This case arises out of a September 14, 2010 traffic stop in Davidsonville, Maryland, of which the parties offer dramatically different accounts.  Glass alleges that he was subjected to false arrest by Collier and malicious prosecution by the Defendants, who "willfully ignored and were deliberately indifferent to overwhelming evidence of [Glass's] actual innocence."  Compl. ¶¶ 2-3.  The Defendants assert that Glass is a "vindictive malcontent and conspiracy theorist[,] the likes of which Hollywood film director Oliver Stone would be proud."  ECF No. 11-1 at 2 n.3.

A. The Traffic Stop

At about 8:15 a.m. on September 14, 2010, Glass was driving westbound on Rutland Road in Davidsonville, Maryland.  Compl. ¶ 20.  At the same time, AACPD Officer Collier was driving out of the parking lot of a pediatrician's office at 2772 Rutland Road. *Id.* ¶ 21.  Collier was in an unmarked Ford Escape sport utility

---

and documents attached to the motion that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] For the motion to dismiss, the well-pled allegations in Glass's complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

vehicle ("SUV"), owned by Anne Arundel County, with "heavily tinted" windows.  *Id.* ¶ 23.  When Glass "exited" a blind "S" curve in Rutland Road about 50 yards east of the pediatrician's driveway, he saw the Ford Escape stopped at the end of the driveway.  *Id.* ¶ 24.  As Glass continued to drive toward the driveway, the Ford Escape "suddenly entered" Rutland Road about 20 yards in front of Glass's car.  *Id.* ¶ 25.  Glass "immediate-ly" braked and sounded his horn to "alert" the Ford Escape's driver to "the dangerous situation."  *Id.* ¶ 26.  About 50 yards ahead, the Ford Escape pulled into the right turn lane at the intersection of Rutland View Road and stopped.  *Id.* ¶ 27.  Glass continued driving westbound.  *Id.* ¶¶ 27-28.

After Glass had driven about 300 yards farther, he noticed that the Ford Escape was behind him with blue lights flashing in the windshield.  Compl. ¶ 28.  Glass pulled over, and the Ford Escape pulled over behind him.  *Id.* ¶¶ 29-30.  Glass began to leave the car.  *Id.* ¶ 30.  As he did, Collier left the Ford Escape--wearing a t-shirt, running shorts, and sneakers--and ordered Glass to "get back" inside.  *Id.* ¶¶ 30-31.  Glass complied.  *Id.* ¶ 30.  According to Glass, Collier then "charged up" to Glass's car in an "aggressive manner," "screaming" that "there are laws against blowing your horn."  *Id.* ¶ 31.  Collier lifted his t-shirt to display a holstered gun, but did not identify himself as a police officer.  *Id.* ¶¶ 32-33.  When Glass

explained he had sounded the horn because of Collier's failure
to yield, Collier "again became extremely agitated" and
"demanded" Glass's license and registration.  *Id.* ¶¶ 34-35.

     At about 8:19 a.m., Collier took Glass's driver's license
and registration back to the Ford Escape, where he stayed for
about 15 minutes.  Compl. ¶ 36.  In the interim, Glass called
911.  *Id.*[5]  Collier returned to Glass's car at about 8:34 a.m.,

---

[5] Glass spoke with 911 Operator Linda Cooper, who told him that
the man detaining him was Officer "Van Dyke" and offered to send
a supervisor to the scene.  Compl. ¶¶ 41-42.  Cooper put Glass
on hold and spoke to Gilmer, who was the supervising officer at
the Southern District Station.  *Id.* ¶ 43.  Gilmer refused to
speak to Glass and asked to be patched through to Collier.  *Id.*
¶¶ 43-44.  Collier refused to speak to Gilmer.  *Id.* ¶ 44.  In a
later interview with Internal Affairs, Gilmer explained that he
did not respond to the scene because he "did not want the
officer's safety compromised waiting for me."  *Id.* ¶ 45
(internal quotation marks omitted).  Gilmer instructed Cooper to
send a patrol officer, and she did so at about 8:23 a.m.  *Id.* ¶
46.  Collier overheard the request for back up and canceled it.
*Id.*  Collier then used his personal cell phone to call Gilmer.
*Id.* ¶ 51.  Collier told Gilmer that he "may have" cut off
Glass's car, but explained that Glass had tailgated him for "a
substantial distance" beforehand.  *Id.* ¶ 52.  Glass alleges that
Collier and Gilmer "agreed" to issue a "false[]" citation.  *Id.*
¶ 53.
     While Glass was on hold, he became afraid that the oncoming
traffic was going to hit his car.  Compl. ¶ 47.  Glass asked
Cooper for help in moving his car out of the way.  *Id.*  Cooper
informed Collier of this request at about 8:27 a.m.  *Id.*  Glass
alleges that, by this time, Collier "had received information
that [Glass's] record [was] free of any traffic violations,
accidents or other blemishes," but "continued to detain" Glass
"without justification" in a "dangerous location."  *Id.* ¶ 48.
     At about 8:29 a.m., Cooper transferred Glass's call to 911
Supervisor Charles Hubbard.  Compl. ¶ 49.  Hubbard told Glass
that no supervisor would be coming to assist him, because "it
was police department policy that the officer controls the scene
of the traffic stop."  *Id.*

and "thrust" his fist "into the window" near Glass's face with a
small card in hand. *Id.* ¶¶ 37, 54. Collier stated that he was
an Anne Arundel County police officer, but did not provide his
name or identification number. *Id.* ¶ 37. Collier then handed
Glass a citation for following too closely, in violation of Md.
Code Ann., Transp. § 21-310. *Id.* ¶ 38.[6] Glass told Collier that
he would dispute the ticket in court and "hoped" that Collier
would attend. *Id.* Collier became "extremely enraged" and asked
if Glass was threatening him. *Id.* Glass responded that he was
not and, after Collier told him he was free to leave, drove
away. *Id.* According to the dispatcher's notes, the traffic
stop lasted 17 minutes. *See id.* ¶ 39; ECF No. 11-3.[7] No one
else witnessed the stop. *See generally* Compl. ¶¶ 28-55.[8]

   While Glass was driving home after the incident, he called

_____

[6] Section 21-310(a) provides that "[t]he driver of a motor
vehicle may not follow another vehicle more closely than is
reasonable and prudent, having due regard for the speed of the
other vehicle and of the traffic on and the condition of the
highway." On the back of the citation, Collier allegedly wrote
that he had executed the traffic stop based on observations that
Glass had "laid on" his horn, was "shaking his head," and had
followed close behind Collier's car for about 50 yards. Compl.
¶ 55.

[7] In his opposition to the motion to dismiss or for summary
judgment, Glass objects that the duration of the roadside
detention was "much longer" than 17 minutes, as Collier spent
"several minutes" "confront[ing]" and "shout[ing]" at Glass
before calling the dispatcher. ECF No. 19 at 5.

[8] However, Collier's two children were in the backseat of his
car. Compl. ¶ 23.

Chief of Police Teare's office. Compl. ¶ 63. Glass was referred to Major Thomas Wilson. *Id.* Wilson told Glass that "nothing w[ould] be done" unless Glass filed a written complaint with Internal Affairs. *Id.* ¶ 64. Glass called Internal Affairs and spoke with Sergeant Greg Speed about the incident. *Id.* ¶ 65. At about 1:44 p.m. that day, Lieutenant David Feerrar left a voicemail message for Glass in which he stated he was responding to Glass's request to speak with a supervisor in the Southern District. *Id.* ¶ 66. When Glass returned the call at about 2:00 p.m., Feerrar told him that because he had spoken to Internal Affairs, Feerrar was prohibited from taking further supervisory action. *Id.* Glass attempted to contact Speed again but was unsuccessful. *See id.* ¶ 67.

On September 15, 2010, Glass received a call from Davis, who identified himself as the commander of the AACPD's Internal Affairs section. Compl. ¶ 68. Allegedly, Davis attempted to persuade Glass not to pursue the complaint. *Id.* ¶ 69. On September 30, 2010, Glass sent a letter to Teare with a "detailed explanation" of the incident. *Id.* ¶ 70. The next day, Davis wrote a letter to Glass acknowledging Glass's complaint. *Id.* ¶ 71.[9]

---

[9] According to Glass, Collier prepared a type-written "report" in the aftermath of the incident. Compl. ¶ 56. Glass alleges that the report contained numerous false statements and intentionally misleading omissions. *See id.* ¶¶ 57-58. The Defendants assert

On October 19, 2010, Internal Affairs Corporal Alfred Barcenas interviewed Cooper, Hubbard, and Gilmer about the incident.  Compl. ¶ 72.[10]  Two days later, Barcenas interviewed Glass at AACPD headquarters.  *Id.* ¶ 73.  According to Glass, Barcenas used "trickery" in an "unsuccessful effort" to find inconsistencies in Glass's recollection.  *Id.*  Collier was not interviewed.  *Id.* ¶ 77.[11]

B. The State Litigation

1. The Traffic Case (Anne Arundel County District Court)

Glass received a summons to the District Court for Anne Arundel County for a trial on the traffic citation (the "Traffic case").  Compl. ¶ 82.[12]  Glass sent a *Brady* request to the State's Attorney and, on January 3, 2011, issued 10 subpoenas for "witnesses and records to use in his defense."  *Id.*; *see* ECF

---

that the "report" consisted of Collier's notes in preparation for trial, and state that Collier "never submitted a police report concerning the incident."  ECF No. 11-1 at 3.  At the November 1, 2011 trial on the citation, Collier testified that he prepared the typed notes soon after the traffic stop.  ECF No. 11-20 at 4 (82:15-21, 83:1-15).

[10] The complaint indicates that the year was 2011.  Compl. ¶ 72. This appears to have been error.

[11] Glass alleges that "it is the policy of the AACPD not to interview an accused officer about alleged misconduct [if] the officer is a witness in any ongoing investigation or prosecution."  Compl. ¶ 79.

[12] *State v. Glass*, Citation No. 0FY86315 (Dist. Ct. for Anne Arundel Cnty).

Nos. 11-4 to -14.[13]   On January 6, 2011, the County moved to

quash.  *See generally* ECF No. 11-19.

At a February 17, 2011 hearing, Judge McKenna ordered the

County to produce the Internal Affairs file for *in camera*

review.  Compl. ¶ 83; *see* ECF No. 11-16 at 7 (23:21-24:4).

Glass alleges that, in its response to this order, the County

withheld materials including Collier's notes on the citation and

"falsified" report.  Compl. ¶ 83.  However, at March 18 and May

16, 2011 hearings, the County informed Judge McKenna that the

records it had provided were complete.  *See, e.g.*, ECF No. 11-17

at 4 (9:9-11, 11:3-8); ECF No. 11-18 at 8 (26:15-20).[14]   Judge

McKenna granted the motion to quash as to Teare, Callahan,

---

[13] Subpoenas were issued to Collier (ECF No. 11-4); Teare (ECF
No. 11-5); Chief Administrative Officer of the Office of the
County Executive Dennis Callahan (ECF No. 11-6); Wilson (ECF No.
11-7); Davis (ECF No. 11-8); Feerrar (ECF No. 11-9); Speed (ECF
No. 11-10); Barcenas (ECF No. 11-11); Cooper (ECF No. 11-12);
Ryder (ECF No. 11-13); and Hubbard (ECF No. 11-14).  The
subpoenas commanded, *inter alia*, that the subjects appear to
testify at trial and that they produce all records in their
possession prepared on or dated September 14, 2010, as well as
all records prepared on or after September 14, 2010 that
"pertain[ed]" to Glass.  *See generally* ECF Nos. 11-4 to -14.

[14] Also on March 18, 2011, Glass submitted a request under the
Maryland Public Information Act (the "PIA"), Md. Code Ann.,
State Gov't §§ 10-611, *et seq.*, to Central Records Manager
Ryder.  Compl. ¶ 84.  On April 14, 2011, Deputy Manager Fraser
responded to Glass's request.  *Id.* ¶ 85.  Fraser told Glass that
"there are not records responsive to the requests beyond that
which has already been supplied to you."  *Id.* (internal
quotation marks omitted).  Glass alleges that Fraser "concealed"
the existence of Collier's notes on the citation, Collier's
typed report, and "other responsive records" in the Defendants'
custody.  *Id.*

Wilson, Feerrar, Speed, and Barcenas. ECF No. 11-18 at 10

(35:13-18). Judge McKenna also ordered that Glass "may require

by service of subpoena" Cooper, Davis, Gilmer, and Hubbard to

appear for trial and to produce for use as evidence the AACPD

internal affairs records on the charges against Glass. *Id.*

Trial was held on November 1, 2011. *See* ECF No. 11-20.

Collier, Davis, Gilmer, and Glass testified. Compl. ¶ 88.

Glass was acquitted. *Id.*

2. The PIA Action (Anne Arundel County Circuit Court)

On May 4, 2011, Glass sued the County and others in the

Circuit Court for Anne Arundel County for "improperly

with[olding] public records and fail[ing] to diligently search

for records . . . required to be disclosed by the [PIA]" (the

"PIA action"). ECF No. 11-21 at 1; *see* Compl. ¶ 87.[15] On August

4, 2011, the defendants moved to dismiss or for summary

judgment. Compl. ¶ 89; ECF No. 11-21 at 5. A hearing was held

on November 14, 2011. ECF No. 11-21 at 1. In December 2011,

Ryder and Davis signed affidavits stating that they had

conducted a complete search for Collier's notes and requested

Collier to produce his records. Compl. ¶¶ 89, 91. Ryder

affirmed that all responsive records were produced. *Id.* ¶ 89.

According to Glass, both affidavits intentionally omitted

---

[15] *Glass v. Anne Arundel Cnty., et al.*, No. C-11-16106 (Cir. Ct.
for Anne Arundel Cnty. filed May 4, 2011).

material facts, such as that Collier's notes and police report were "concealed" until September 2011. *Id.* ¶ 90. On December 22, 2011, Judge Kiessling granted the defendants' motion for summary judgment, on the grounds that the records requested were "personnel" files, and "Maryland case law clearly mandates nondisclosure of the internal affairs records to anyone who is not a party in interest." ECF No. 11-21 at 10, 12. Glass appealed. ECF No. 11-1 at 3.[16]

C. Procedural History of This Case

On June 26, 2012, Glass filed this suit against the Defendants for civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986. Compl. ¶ 1.[17] He alleged, *inter alia*, that

---

[16] According to Davis, Gilmer, Ryder, and Fraser, Glass also filed a complaint with the Maryland Bar Counsel against the attorneys who "handled" the motion to quash and PIA request. ECF No. 11-1 at 2 n.3. Bar counsel dismissed the complaint without a hearing. *Id.* Glass has filed a second suit against the County for an alleged PIA violation, which is also pending. *Id.*

[17] Glass alleged six causes of action:
   (1) "False Arrest and False Imprisonment" under 42 U.S.C. § 1983 (Collier and the County);
   (2) "Fabrication of Evidence" under 42 U.S.C. § 1983 (Collier, Employee X, and the County);
   (3) "Bad Faith Concealment of Exculpatory Evidence" under 42 U.S.C. § 1983 (Davis, Ryder, Fraser, and the County);
   (4) "Failure to Implement Appropriate Policies, Customs[,] and Practices" under 42 U.S.C. § 1983 (the County);
   (5) "Conspiracy to Interfere with Civil Rights" under 42 U.S.C. § 1985 (all Defendants); and
   (6) "Neglecting to Prevent Conspiratorial Wrongs" under 42 U.S.C. § 1986 (all Defendants).
Compl. at 21-35.

Collier unlawfully arrested and detained him, and later
fabricated evidence with the assistance of Employee X.  Compl.
¶¶ 95, 100-01.  Glass further alleged that Davis, Ryder, and
Fraser made false statements with the aim of concealing evidence
that would impeach Collier's credibility.  *Id.* ¶ 104.  At "all
times relevant to this Complaint," Glass alleged that Collier,
Employee X, Davis, Ryder, Fraser, and Gilmer were acting "under
the direction and control of" the County, and "pursuant to
either official policy or the practice, custom, and usage of the
County and its police department."  *Id.* ¶ 109.  As to each
count, Glass sought judgment of at least $5,000,000 plus
interest, costs and attorney's fees, as well as $5,000,000 in
punitive damages.  *Id.* at 21-24, 32, 34-35.  Glass also seeks a
permanent injunction to "protect all persons and to prevent such
misconduct from happening again."  *Id.* ¶ 5.

On August 2, 2012, Davis, Gilmer, Ryder, and Fraser moved
to dismiss or, in the alternative, for summary judgment.  ECF
No. 11.  Also on August 2, the Defendants moved to bifurcate and
stay discovery.  ECF No. 12.  On August 9, 2012, the Defendants
moved to strike portions of the complaint.  ECF No. 13.  On
August 20, 2012, Glass opposed the motion to bifurcate and stay
discovery.  ECF No. 16.  On August 27, 2012, Glass opposed the
motion to strike.  ECF No. 18.  On August 29, 2012, Glass
opposed the motion to dismiss or for summary judgment.  ECF No.

19; *see* ECF No. 15.  On August 30, 2012, the Defendants replied in support of the motion to bifurcate and stay discovery.  ECF No. 20.  On September 5, 2012, Davis, Gilmer, Ryder, and Fraser replied in support of the motion to dismiss.  ECF No. 21.

II. Analysis

  A. Motion to Dismiss (ECF No. 11)

    Davis, Gilmer, Ryder, and Fraser move to dismiss all counts against them (Counts Three, Five, and Six).[18]

---

[18] In the last two pages of their motion to dismiss or for summary judgment, Davis, Gilmer, Ryder, and Fraser argue that the *Rooker-Feldman* doctrine bars this Court from entertaining "any issues that were or could have been litigated in the state court."  ECF No. 11-1 at 13-14.  Because this argument challenges subject matter jurisdiction, the Court will consider it before reaching the merits.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.").

  The *Rooker-Feldman* doctrine bars lower federal courts from considering issues raised and decided in the state courts, as well as issues that are "inextricably intertwined" with the issues that were before the state court.  *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (internal quotation marks omitted).  The doctrine applies when: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of "injuries caused by state-court judgments;" (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff "invit[es] district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

  Here, two state actions are at issue: the criminal traffic case against Glass in the Anne Arundel County District Court, and Glass's civil case under the PIA in the Anne Arundel County Circuit Court.  *See* Compl. ¶¶ 82-91.  Glass alleges that Davis, Ryder, and Fraser knowingly concealed "exculpatory" evidence in both cases.  *See, e.g.*, *id.* ¶ 105.

  As to Glass's allegations about these Defendants' concealing evidence in the traffic case, *id.* ¶ 105(a), (b), this Court

1. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed

for failure to state a claim upon which relief can be granted.

Rule 12(b)(6) tests the legal sufficiency of a complaint, but

does not "resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses." *Presley v. City of

Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a

"short and plain statement of the claim showing that the pleader

is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l

Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's

notice-pleading requirements are "not onerous," the plaintiff

must allege facts that support each element of the claim

---

need not consider whether the issues here were decided by the
District Court, or inextricably intertwined with issues before
that court, because Glass's acquittal renders the doctrine
inapplicable. *Burrell v. Virginia*, 395 F.3d 508, 511-12 (4th
Cir. 2005) (*Rooker-Feldman*'s concern that "lower federal courts
will not act as courts of appeals from state courts" is "simply
not present" when the state court dismissed all charges against
a criminal defendant).
    The doctrine also does not apply to Glass's allegations
about Davis, Ryder, and Fraser's concealing evidence in the PIA
action, Compl. ¶ 105(c), (d), (e), because Glass does not
challenge the state court *judgment* in that case, but rather
alleges that these Defendants committed constitutional viola-
tions during the litigation. *See Exxon*, 544 U.S. at 284.
Further, a Maryland Judiciary Case Search reveals that the PIA
action remains pending on appeal. *Cf. Ware v. Polk Cnty. Bd. of
Cnty. Comm'rs*, 394 F. App'x 606, 609 (11th Cir. 2010) ("Because
no appeal remained pending at the time Ware commenced this
federal action, the state proceedings were ended for purposes of
the *Rooker-Feldman* doctrine.").

advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,
764-65 (4th Cir. 2003). These facts must be sufficient to
"state a claim to relief that is plausible on its face." *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[]
facts that are 'merely consistent with a defendant's
liability'"; the facts pled must "allow[] the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must
not only allege but also "show" that the plaintiff is entitled
to relief. *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged--but it has not shown--that the pleader is entitled to
relief." *Id.* (internal quotation marks and alteration omitted).

"The determination whether to dismiss with or without
prejudice under Rule 12(b)(6) is within the discretion of the
district court."[19]   "[P]leading is [not] a game of skill in which
one misstep by counsel may be decisive to the outcome . . . the
purpose of pleading is to facilitate a proper decision on the
merits." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)

---

[19] *180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-
39 (D. Md. 2009) (*citing Carter v. Norfolk Cmty. Hosp. Ass'n*,
761 F.2d 970, 974 (4th Cir. 1985)).

(internal quotation marks omitted).   When a plaintiff's complaint fails to state a claim, he "should generally be given a chance to amend the complaint . . . before the action is dismissed with prejudice."[20]   But, dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim.   *See, e.g.*, *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

   2. The Merits

      a. Count Three (§ 1983)

In Count Three ("Bad Faith Concealment of Exculpatory Evidence"), Glass asserts that Davis, Ryder, and Fraser[21] made false statements and omissions that were designed to mislead, in a "knowing and bad faith effort to conceal evidence that is exculpatory and is impeaching of Collier's credibility as the central witness against [Glass]."   Compl. ¶ 104.[22]   Specifically,

---

[20] *FinServ Cas. Corp. v. Settlement Funding, LLC*, No. H-10-0264, 2010 WL 2757536, at *10 (S.D. Tex. July 13, 2010) (*citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

[21] Count Three was also brought against the County, *see* Compl. at 23; however, the County did not join in the pending motion to dismiss or for summary judgment, *see* ECF No. 11.

[22] Here, Glass sued each individual, in his or her personal and official capacities, for money damages.   *See generally* Compl. An "official capacity suit is, in all respects other than name, to be treated as a suit against the entity."   *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   Thus, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to

Glass alleges that: (1) as the supervisor of Internal Affairs,
Davis withheld Collier's police report and portions of the
Internal Affairs file from the state court's *Jencks* review
between January and May 2011 in the traffic case, and signed a
false affidavit in December 2011 to conceal that misconduct in
the PIA action; (2) as manager of AACPD records, Ryder signed a
false affidavit in December 2011 to conceal earlier misconduct
in the PIA action; and (3) as acting manager of AACPD records,
Fraser "false[ly]" responded to Glass's PIA request in April
2011 in the traffic case and concealed the existence of
Collier's report. *Id.* ¶ 105.

Section 1983 provides a remedy against any person who,
acting under color of law, deprives another of constitutional
rights. 42 U.S.C. § 1983. It "is not itself a source of
substantive rights, but merely provides a method for vindicating
federal rights elsewhere conferred." *Albright v. Oliver*, 510
U.S. 266, 271 (1994) (internal quotation marks and citation
omitted).

Glass alleges that Davis, Ryder, and Fraser violated his
rights under the Fifth and Fourteenth Amendments by their "bad

---

invoke its sovereign immunity from suit even though individual
officials are nominal defendants." *Ford Motor Co. v. Dep't of
Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds
by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613
(2002). No party has invoked sovereign or any other immunity,
and the Court will not address the issue here.

faith concealment of exculpatory evidence." Compl. ¶ 106.

Davis, Ryder, and Fraser[23] argue that they owed Glass no *Brady*

duty to disclose and, even if information were withheld, Glass

has not suffered a "constitutionally cognizable" harm because he

was acquitted. ECF No. 11-1 at 9-11. Glass counters that the

motion is based on disputed facts. ECF No. 19 at 5-7, 8.[24]

Glass also asserts that his complaint alleges not only *Brady*

violations, but also "gross and persistent violations of [the]

right to be free from unfairly being put on trial." *Id.* at 8,

9. Glass asserts that he has suffered "harm" in the form of

attorney's fees and other expenses, as well as "unreasonable

subjection to unfair trial." *Id.* at 9 n.2, 10-12.

The Fourteenth Amendment prohibits states from depriving

any person of his liberty without first affording him "due

process of law" by means of a fair trial. U.S. Const. amend.

XIV. Ensuring procedural due process, *Brady v. Maryland*, 373

U.S. 83 (1963) provides that "suppression by the prosecution of

---

[23] Although Gilmer also joined the motion to dismiss or for summary judgment, he was not charged in Count Three. *See* Compl. at 23.

[24] In support of this argument, Glass relies principally on the complaint itself. See ECF No. 19 at 5-7. Glass cannot defeat summary judgment on the sole basis that his version of events is the correct one. *See Erwin v. United States*, 591 F.3d 313 (4th Cir. 2010) (stating that a litigant "cannot create a material fact by reliance on conclusory allegations or bare denials"). Of course, that Glass cannot defeat a summary judgment motion does not mean his claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

evidence favorable to an accused . . . violates due process
where the evidence is material either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution."
*Id.* at 87.   To prove a *Brady* violation, the accused must show
that the evidence (1) is exculpatory or impeaching, (2) was
suppressed by the Government, and (3) was material to his
defense, *i.e.*, he was prejudiced by the suppression.   *See United
States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010).   In
*Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court
extended *Brady* to impeachment evidence.   *Id.* at 154-55.

Notably, *Brady* and its progeny do not address whether a
police officer violates the Constitution by withholding evidence
acquired during the course of an investigation.[25]   However, the
Fourth Circuit has held that a police officer who withholds
exculpatory information from a prosecutor *can* be liable under §
1983, *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989), but
only when the officer's failure to disclose "deprived the § 1983
plaintiff[] of [his] right to a fair trial," *Taylor v. Waters*,
81 F.3d 429, 436 n.5 (4th Cir. 1996).

Having identified that government agents other than
prosecutors have a duty to disclose exculpatory evidence, the

---

[25] *Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (en banc)
(Wilkinson, C.J., concurring in the judgment) (per curiam)
*(citing United States v. Agurs*, 427 U.S. 97 (1976); *Giglio v.
United States,* 405 U.S. 150 (1972); and *Brady*, 373 U.S. at 83).

Fourth Circuit recently addressed in *Jean v. Collins*, 221 F.3d

656 (4th Cir. 2000), whether the scope of the duty is

commensurate with that under *Brady*.  Because the decision is

central to this Court's analysis, it will be discussed in some

detail.

Lesly Jean sued Jacksonville, North Carolina police

officers Delma Collins and James Shingleton under § 1983 for

failing to disclose exculpatory evidence during Jean's criminal

trial for rape and sexual offenses.  *Jean v. Collins*, 155 F.3d

701, 703 (4th Cir. 1998) (en banc), *vacated and remanded*, 526

U.S. 1142 (1999).[26]  The district court granted summary judgment

in favor of Collins and Shingleton, on the grounds that they

were entitled to qualified immunity.  *Id.*  The Fourth Circuit

affirmed, explaining that, in 1982, "a reasonable police officer

would not have known that his failure to turn over such evidence

violated a criminal defendant's clearly established constitu-

tional rights."  *Id.* at 708.  The Supreme Court granted

certiorari, vacated the judgment, and remanded to the Fourth

Circuit for consideration in light of *Wilson v. Layne*, 526 U.S.

603 (1999).  *See Jean v. Collins*, 526 U.S. 1142 (1999).[27]  On

---

[26] The opinion is cited here solely for background and procedural
history.

[27] *Wilson* held that a court considering a defense of qualified
immunity should first ask whether the disputed state action
would violate present-day constitutional law *before* asking

remand, the Fourth Circuit considered "when police officers are liable under § 1983 for allegedly withholding exculpatory evidence from the prosecution and by extension a criminal defendant." *Jean*, 221 F.3d at 658 (Wilkinson, C.J., concurring in the judgment). The Fourth Circuit affirmed, by an equally divided en banc court. *Id.*[28]

Preliminarily, Chief Judge Wilkinson's concurrence in the judgment acknowledged that caselaw "left unclear the exact nature of any duty that the law imposes on police with regard to exculpatory evidence." 221 F.3d at 659 (Wilkinson, C.J., concurring in the judgment). However, "[s]everal character-istics of this duty . . . seem evident." *Id.* First, alleged failures to disclose "do not implicate constitutional rights where no constitutional deprivation results therefrom." *Id.* "In this context," Chief Judge Wilkinson continued, "the constitutional deprivation must be defined as a deprivation of liberty without due process of law." *Id.* "In the absence of a cognizable injury, *such as a wrongful criminal conviction* . . .

---

whether the illegality of the state conduct was "clearly established" when it occurred. *See* 526 U.S. at 609.

[28] Chief Judge Wilkinson, with Judges Widener, Wilkins, Niemeyer, Williams, and Traxler, concurred in the judgment. 221 F.3d at 658. Judges Murnaghan, Michael, Diana Gribbon Motz, King, and Hamilton dissented. *Id.* at 663. Judge Luttig separately dissented. *Id.* at 678.

no § 1983 remedy will lie." *Id.* at 659-60 (emphasis added).[29]
Second, Chief Judge Wilkinson stated that, although police
officers have a duty to disclose, that duty is distinct from the
prosecution's burden under *Brady. See id.* at 660.[30] Unlike a
*Brady* violation, to establish a constitutional violation by
police officers, a plaintiff must allege that the officers acted
in bad faith. *Id.*

"Of course, an affirmance by an equally divided court is
not entitled to precedential weight." *Ark. Writers Project,
Inc. v. Radland*, 481 U.S. 221, 234 n.7 (1987) (*citing Neil v.
Biggers*, 409 U.S. 188, 192 (1972)). Nevertheless, this Court
finds *Jean's* concurring opinion persuasive--at least as to the
constitutional injury required--in light of other law. Two
principles emerge.

First, to the extent that Glass alleges Davis, Ryder, and
Fraser are directly subject to *Brady*, his argument is foreclosed

---

[29] *See also id.* at 663 (explaining that a *Brady* violation that
resulted in the overturning of the § 1983 plaintiff's conviction
is a "necessary . . . condition for § 1983 liability on the part
of the police," because "the *Brady* violation establishes the
requisite threshold of constitutional injury *(a conviction
resulting in loss of liberty) below which no § 1983 action can
lie*") (emphasis added)).

[30] *See id.* (noting that "[t]he *Brady* duty is framed by the
dictates of the adversary system and the prosecution's legal
role therein," under the theory that "the prosecutor can view
the evidence from the perspective of the case as a whole while
police officers, who are often involved in only one portion of
the case, may lack necessary context").

because the *Brady* duty remains at all times with the prosecu-
tion.[31]   Second, to the extent that Davis, Ryder, and Fraser are
alleged to have violated Glass's procedural due process right to
a fair trial, Glass bears the burden of showing, at a minimum, a
deprivation of life, liberty, or property.   U.S. Const. amend.
XIV, § 1.[32]

    Glass alleges that he suffered constitutional "injury" in
the form of "subject[ion] to an unfair trial," which in turn
caused him to incur attorney's fees and "other expenses in his
defense."   ECF No. 19 at 11.   In support, Glass cites a series
of cases addressing whether the related tort of malicious
prosecution was actionable under § 1983.   In *Goodwin v. Metts*,
885 F.2d 157, 162 (4th Cir. 1989), the Fourth Circuit
adjudicated a claim of malicious prosecution against a police
officer who failed to disclose exculpatory information to a
prosecutor.   *Id.*   The Fourth Circuit held that "[a] police
officer who withholds exculpatory information from the

---

[31] *Jean*, 221 F.3d at 660 (Wilkinson, C.J., concurring in the
judgment) ("[T]o speak of the duty binding police officers as a
*Brady* duty is simply incorrect."); *see also Lynn v. Tarney*, 405
F. App'x 753, 762 n.4 (4th Cir. 2010) ("[T]he duty imposed by
the *Brady* doctrine is an obligation on *prosecutors,* rooted in
the due process clauses of the Fifth and Fourteenth Amendments,
to disclose exculpatory evidence (including impeachment
evidence) (emphasis in original)).

[32] *See also id.* at 663 (noting the "requisite threshold" of
constitutional injury (a conviction resulting in loss of
liberty) below which no § 1983 action can lie").

prosecutor can be liable [for malicious prosecution] under both section 1983 and the state common law." *Id.*  Three years later, in *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court tested the Fourth Circuit's tort-based approach by holding that the Due Process Clause does not recognize a fundamental "liberty" interest in being free from malicious prosecution. *Id.* at 269-71, 275.  In *Taylor v. Waters*, 81 F.3d 429 (4th Cir. 1996), the Fourth Circuit reconciled *Goodwin* with *Albright*:

> To the extent that *Goodwin* based its holding on a conclusion that the officer's failure to disclose exculpatory evidence deprived the § 1983 plaintiffs of a liberty interest in avoiding prosecution on less than probable cause, that reasoning has been rejected in *Albright*.  But, to the extent that *Goodwin* ruled that the officer's failure to disclose the exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial, its holding is not affected by *Albright*.

*Id.* at 436 n.5 (internal citations omitted).

According to Glass, *Taylor* is "properly understood" as "preserving a substantive due process right against being subjected to an unfair trial as a result of an officer's failure to disclose exculpatory information."  ECF No. 19 at 10. Contrary to Glass's assertion, *Albright* rejected the theory that substantive due process protects a substantive "right" to freedom from malicious prosecution.  510 U.S. at 269-71, 275. *Taylor*, in turn, correctly recognized that *Albright* did not foreclose alternative theories of relief, such as procedural due

process.  81 F.3d at 436 n.5.  Here, Glass was never arrested,
detained, imprisoned, or convicted.  Compl.  Thus, assuming that
Glass has successfully alleged unfair *process*, he has not shown
the predicate constitutional injury--a deprivation of *life*,
*liberty*, or *property*.  U.S. Const. amend. XIV.[33]

    Count Three will be dismissed with prejudice.

        b. Count Five (§ 1985)

    In Count Five ("Conspiracy to Interfere with Civil
Rights"), Glass alleges that the Defendants violated 42 U.S.C. §
1985[34] by agreeing to commit, and jointly committing, false
arrest, fabrication of evidence, bad faith concealment of
exculpatory evidence, malicious prosecution, and "the depriva-
tion of [Glass's] constitutional rights."  Compl. ¶ 124.
According to Glass, Davis, Gilmer, Ryder, and Fraser each took
at least one unlawful action in knowing furtherance of the
conspiracy.  *See id.* ¶¶ 126, 128, 129, 131, 132.

---

[33] *See also, e.g.,* *Faust v. Coakley*, No. 07-11209-RWZ, 2008 WL
190769, at *4 (D. Mass. Jan. 8, 2008) ("[B]ecause plaintiffs
were never criminally convicted, they did not suffer any harm as
a direct result of the defendants' alleged behavior. They
therefore cannot assert a § 1983 claim based upon alleged *Brady*
violations.").

[34] Glass does not indicate which subsection the Defendants
allegedly violated.  *See generally* Compl. ¶¶ 123-36.  The Court
will construe the complaint to allege violations of §§ 1985(2)
("Obstructing justice") and (3) ("Depriving persons of rights or
privileges").

i. § 1985(2)

Subsection (2) of § 1985 contains five clauses;[35] Count Five
appears to allege violation of the fourth.  The fourth clause of
§ 1985(2) provides a cause of action against those who "conspire
for the purpose of impeding, hindering, obstructing, or
defeating, in any manner, the due course of justice in any State
or Territory, with intent to deny to any citizen the equal
protection of the laws."  42 U.S.C. § 1985(2).  A plaintiff must
show that the defendants "were motivated by racial or other
class-based, invidiously discriminatory animus."  *Sellner*, 565
F. Supp. at 246.[36]  Glass has made no allegation that any
defendant was motivated by race- or class-based invidiously
discriminatory animus.  *See generally* Compl.  Indeed, Glass's
sole allegations as to the Defendants' motivation are that

---

[35] *See Sellner v. Panagoulis*, 565 F. Supp. 238, 245 (D. Md.
1982).

[36] *See Scott v. Mountain Mission Sch.*, 809 F.2d 786 (Table), 1987
WL 36169, at *2 (4th Cir. 1987) (per curiam) (affirming district
court's dismissal of § 1985(2) claim for failure to allege a
racial or other class-based animus); *accord Daigle v. Gulf State
Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986) (race or class-
based animus required for § 1985(2) conspiracy to deny equal
protection of the laws); *Harrison v. Springdale Water & Sewer
Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1985) (same); *Bretz v.
Kelman*, 773 F.2d 1026, 1029 (9th Cir. 1985) (same); *Williams v.
St. Joseph Hosp.*, 629 F.2d 448, 451 (7th Cir. 1980) (same);
*Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978) (same), *cert.
denied*, 436 U.S. 906 (1978); *Brawer v. Horowitz*, 535 F.2d 830,
840 (3d Cir. 1976) (same); *Hahn v. Sargent*, 523 F.2d 461, 429
(1st Cir. 1975) (same), *cert. denied*, 425 U.S. 904 (1976).

Collier was in a bad mood on the day of the incident,[37] and the other Defendants acted to cover-up Collier's misconduct, see Compl. ¶ 40.

Because Glass has failed to allege race- or class-based discriminatory animus, his § 1985(2) claim must be dismissed.[38]

### ii.   § 1985(3)

Subsection (3) of § 1985 provides a cause of action "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States."  Like the fourth clause of subsection (2), § 1985(3) requires the plaintiff to show that the conspiracy involves two or more people "motivated by a specific class-based, invidiously discriminatory animus."  *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th

---

[37] *See Compl.* ¶¶ 22, 39, 40.

[38] No brief addresses § 1985's requirement that Glass plead race- or class-based discriminatory animus.  *See generally* ECF No. 11-1; ECF No. 19; ECF No. 21.  However, the Court may raise the issue *sua sponte.  See Jensen v. Conrad*, 570 F. Supp. 91, 99-100 (D.S.C. 1983) (court may raise, *sua sponte*, viability of a plaintiff's claim when failure to state a claim is clear), *aff'd*, 747 F.2d 185 (4th Cir. 1984); *see also, e.g., Pitkin v. Ocwen Fin. Corp.*, No. 8:12-cv-00573-AW, 2012 WL 5986480, at *4 (D. Md. Nov. 27, 2012) (*sua sponte* dismissing *pro se* plaintiff's claims against certain defendants when the plaintiff was using her federal action to relitigate a state foreclosure proceeding and her claims were facially deficient).

Cir. 1995).  Because Glass has failed to show such animus, his §

1985(3) claim must also be dismissed.

Count Five will be dismissed without prejudice.[39]

c. Count Six (§ 1986)

In Count Six ("Neglecting to Prevent Conspiratorial

Wrongs"), Glass alleges that the Defendants violated 42 U.S.C. §

1986 by "neglect[ing] or refus[ing] to prevent or aid in the

preventi[on] of the other defendants' conspiracy to commit the

unlawful and tortuous conduct against [him]."  Compl. ¶ 140.

Section 1986 provides, in relevant part, that

> [e]very person who, having knowledge that any of the
> wrongs conspired to be done, and mentioned in [§] 1985
> of this title, are about to be committed, and having
> power to prevent or aid in preventing the commission
> of the same, neglects or refuses so to do . . . shall
> be liable to the party injured . . . for all damages
> caused by such wrongful act, which such person by
> reasonable diligence could have prevented.

"Notably, claims brought under [§] 1986 are derivative of

claims under [§] 1985."  *Kangalee*, 2012 WL 5457231, at *8.

Thus, Glass's failure to state a claim under § 1985 is fatal to

his § 1986 claim.  *See id.; see also, e.g., Santictevan v.

Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984) ("Hence, there can

be no valid claim under § 1986 of neglect to prevent a known

conspiracy, in the absence of a conspiracy under § 1985.").

Count Six will be dismissed without prejudice.

---

[39] The Court need not determine whether Glass plausibly pled §
1985 conspiracy.  *See* ECF No. 11-1 at 9.

B. Motion to Strike (ECF No. 13)

The Defendants move to strike "immaterial, impertinent, and scandalous" allegations from the complaint.  ECF No. 13.  Glass argues that the motion to strike is "a pretext for inundating this Court with their unfavorable and demeaning portrayal of [Glass]."  ECF No. 18 at 1.

1. Legal Standard

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The court may act "on its own" or on motion made by a party before responding to the pleading.  *Id*.  The Defendants' motion is untimely, because it was filed a week after the motion for summary judgment or to dismiss.  *See generally* ECF Nos. 11, 13.  Because the Court may act *sua sponte*, it will consider the merits of the arguments.

2. The Merits

The Defendants move to strike the following allegations from the complaint: (1) Collier separated from his wife 10 months after the incident (¶ 22): (2) Collier falsely testified at trial that he resided with his wife and children (¶ 61); (3) Collier fabricated statements in his "police report" and omitted items from his "typed report" that were designed to mislead (¶¶ 56-58); (4) Ryder and Fraser submitted false affidavits and willfully failed to disclose information to Glass about

Collier's notes on the back of his citation and the existence of his "report" (¶¶ 85–92); and (5) Gilmer conspired with Collier to charge Glass and testified falsely at the trial (¶¶ 53, 128).

Motions to strike are generally disfavored,[40] and should be denied unless the allegations have "no possible relation to the controversy" and "may cause prejudice to one of the parties." *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–55 (D. Md. 2003).[41] Thus, "in reviewing motions to strike . . . federal courts have traditionally view[ed] the pleading under attack in a light most favorable to the pleader." *Kangalee v. Balt. City Police Dep't*, 2012 WL 5457231, at *10 (D. Md. Nov. 7, 2012) (internal quotation marks omitted). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues."[42] "Scandalous" matter includes allegations that cast a cruelly derogatory light on a party to other persons. *Owen*, 2012 WL 257044, at *5.

---

[40] *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001).

[41] *See also Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D. Md. 2012) (exercising discretion not to strike defenses when movants "articulated no prejudice that would result from a denial of their motion").

[42] *CTH 1 Caregiver v. Owen*, No. 8:11–2215–TMC, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (internal quotation marks omitted).

a. Collier separated from his wife 10 months after the
   incident (¶ 22)

The Defendants argue that there is "no possible relevance"
to the allegation that Collier separated from his wife 10 months
after the traffic stop at issue.  ECF No. 13 at 4.  Glass argues
that Collier's state of mind is "clearly relevant to the legal
question of whether [Collier] was acting unreasonably during the
illegal stop," and that "facts that demonstrate that [Collier]
was going through a period of personal difficulty are surely
pertinent to [his] mental state and motive."  ECF No. 18 at 4.
According to the Defendants, the "relevant" inquiry in this case
is whether the September 14, 2010 traffic stop and citation were
legally justified.  ECF No. 13 at 3.  Glass alleges that there
was no legal justification for either, and that the stop was
instead precipitated by Collier's agitated state of mind.  *See,
e.g.*, Compl. ¶¶ 22, 31, 32, 37, 38.

Collier's subsequent separation is relevant--if only
minimally--to the allegation that he was upset on the day of the
traffic stop.  *See Schultz*, 290 F. Supp. 2d at 654-55.[43]  Thus,
this portion of the complaint will not be stricken.

---

[43] Contrary to the Defendants' assertion, the allegation is not
"scandalous" under the Rule.  *Cf. Owen*, 2012 WL 257044, at *5
(explaining that "[s]candalous" matter includes allegations that
cast "cruelly derogatory light" on a party) (internal quotation
marks omitted)).

b. Collier falsely testified at trial that he resided
with his wife and children (¶ 61)

The Defendants argue that the above allegation is
"spurious" and "has nothing to do" with the events of September
14, 2010.  ECF No. 13 at 4.  Glass counters that "[f]acts that
demonstrate [Collier] apparently falsely testified to conceal
evidence of [his] mental state and motive are admissible to show
consciousness of his wrongdoings."  ECF No. 18 at 5.  Glass
further argues that these facts "indicate the length to which
[Collier] would go to falsely arrest and unlawfully detain
people and to fabricate evidence," which in turn shows that the
other Defendants had prior knowledge of Collier's "heightened
propensity for violating the constitutional rights of others."
*Id.*

Collier's mental state at the time of the traffic stop is
relevant to the issue of whether the stop was lawfully executed.
The allegation that Collier falsely testified about facts
relating to his mental state is arguably supportive of Glass's
theory that the stop was impelled by Collier's emotional
disturbance instead of the law.  Thus, this portion of the
complaint will not be stricken.

31

      c. Collier fabricated statements in his "police report"
         and omitted items from his "typed report" that were
         designed to mislead (¶¶ 56-58)

     The Defendants argue that Glass's allegations about

Collier's police "report" should be stricken as "baseless"

because Collier never prepared one. ECF No. 13 at 4.  The

Defendants acknowledge that Collier did create a "document," but

contend that that document consisted of "personal notes" Collier

compiled to preserve his memory of the events before trial. *Id.*

Glass objects that whether the document is best characterized as

a "report" or "personal notes" is "clearly a question of fact

more properly reserved through discovery and trial."  ECF No. 18

at 6.  This Court agrees.

     Because the Defendants do not argue that the allegations

about Collier's police report are redundant, immaterial,

impertinent, or scandalous, these allegations will not be

stricken from the complaint.  Fed. R. Civ. P. 12(f).

      d. Ryder and Fraser submitted false affidavits and
         willfully failed to disclose information to Glass
         about Collier's notes on the back of his citation and
         the existence of his "report" (¶¶ 85-92)

     The Defendants argue that the above allegations have "no

conceivable relevance" to Glass's causes of action or damages,

because Collier never prepared a "report" and the notes he made

on the back of the citation were not included with the copy he

gave the Records Department.  ECF No. 13 at 5.  The Defendants

further note that Glass was given all of this material before trial and used them during trial. *Id.* Glass counters that the "nature" of Collier's typed report is in dispute, rendering the allegation relevant. ECF No. 18 at 6.

This Court does not find that the above allegations have "no possible relation to the controversy." *Schultz*, 290 F. Supp. 2d at 654–55. Accordingly, they will not be stricken.

> e. Gilmer conspired with Collier to charge Glass and testified falsely at the trial (¶¶ 53, 128)

The Defendants argue that the above allegations are "by definition[] impertinent" because Gilmer was not "present" at the traffic stop and Glass was not damaged by Gilmer's testimony at trial. ECF No. 13 at 5-6. Glass argues that he has alleged Gilmer conspired with Collier to improperly charge him with following too closely and helped to "cover[] up" the illegal stop in his statements to the Internal Affairs investigator and at trial. ECF No. 18 at 7. Glass concludes that these allegations are "all directly relevant." *Id.* The complaint alleges that, during the traffic stop, Collier called Gilmer on his personal cell phone. Compl. ¶ 52. Allegedly, Collier and Gilmer "agreed" to falsely cite Glass for following too closely. *Id.* ¶ 53. These allegations support Glass's claim that Gilmer conspired to interfere with his constitutional rights. Accordingly, they will not be stricken.

The attacked portions of the complaint bear at least some relation to the controversy.  Moreover, the Defendants fail to explain how the failing to strike those allegations would produce prejudice.  *See Schultz*, 290 F. Supp. 2d at 654–55.  The motion to strike will be denied.

C. Motion to Bifurcate and Stay Discovery (ECF No. 12)

The Defendants move to bifurcate Counts Four, Five, and Six, and stay discovery as to those counts.  ECF No. 12-1 at 7.[44]

1. Legal Standard

Under Fed. R. Civ. P. 42(b),

> [f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

The decision to order separate trials is within the Court's "sound discretion."  *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953).  Although "complex" issues may justify bifurcation,[45] separating issues for trial "is not to be routinely ordered."[46]

---

[44] Because Counts Five and Six will be dismissed, *see supra* Part II.A.2(b), (c), the Defendants' motion will be denied as moot as to those counts.

[45] *Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997) (bifurcating asbestos case because numerous causation issues had to be resolved before legal theories and damages could be addressed).

[46] Fed. R. Civ. P. 42(b) advisory committee's note; *see also Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F.

"The burden of proving that bifurcation is warranted rests with the moving party." *Morgan v. Prince George's Cnty.*, No. AW-09-1584, 2010 WL 64405, at *2 (D. Md. Jan. 5, 2010).

    2.   The Merits

    The Defendants move to bifurcate the remaining claim against the County (Count Four), which seeks relief on the basis of § 1983 under a theory of *Monell* liability.[47] ECF No. 12-1 at 3. In support, the Defendants argue that Glass must prove that his rights were violated before he can proceed with his claim against the County; if he prevails and the County pays the judgment, he will have no other damages claim against the County;[48] and punitive damages are not recoverable against the County[49]. ECF No. 12-1 at 8-9. The Defendants also argue that bifurcation would avoid undue prejudice to Collier and unnecessary trial time. *Id.* at 10. Glass objects that the County's municipal liability is not dependent upon any individual defendant's liability. ECF No. 16 at 3. Glass also asserts that bifurcation would be "costly, inefficient, and

---

Supp. 2d 451, 461 (D. Md. 2005) (refusing to bifurcate liability and damages in a complicated patent infringement case).

[47] *Monell v. Department of Social Services*, 436 U.S. 658 (1978), established that municipalities could be liable for constitutional violations under § 1983.

[48] *See* Md. Code Ann., Cts. & Jud. Proc. § 5-303.

[49] *Id.* § 5-303(c).

unnecessary." *Id.* at 6.   Finally, Glass argues that the

Defendants would not be prejudiced by one trial.  *Id.* at *12.*

   Whether bifurcation is appropriate is fact specific.

*Dawson v. Prince George's Cnty.,* 896 F. Supp. 537, 539 (D. Md.

1995).   However, "[b]ifurcation is fairly common in [§] 1983

cases where a plaintiff has asserted claims against individual

government employees as well as the municipal entity that

employs and supervises these individuals." *Beasley v. Kelly*,

No. DKC 10-0049, 2010 WL 3221848 (D. Md. Aug. 13, 2010).[50]  This

is because a municipality may be liable under § 1983 only if

"the municipality *itself* causes the constitutional violation."[51]

Specifically, liability may arise because of a policy or custom

that is "fairly attributable to the municipality" and the

"moving force" behind the constitutional violation.  *Spell v.*

*McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987), *cert. denied*, 484

---

[50] *See also, e.g., Housley v. Holquist*, 879 F. Supp. 2d 472, 476
(D. Md. 2011); *Cann v. Balt. Cnty.*, No. WMN-10-2213, 2011 WL
588343 (D. Md. Feb. 9, 2011); *Jones v. Ziegler*, 894 F. Supp.
880, 883 (D. Md. 1996), *aff'd sub nom. Jones v. Wellham*, 104
F.3d 620 (4th Cir. 1997).

[51] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis
in original).   A municipality cannot be liable under a theory of
*respondeat superior.  Monell*, 436 U.S. at 694; *see also City of
Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that
neither *Monell* nor "any other of our cases" authorizes the award
of damages against a municipal corporation based on the actions
of one of its officers "when in fact the jury has concluded that
the officer inflicted no constitutional harm").

U.S. 1027 (1988).[52]   Absent a direct policy or custom, municipal

liability may be inferred from "deliberate indifference" to the

risk of a constitutional violation because of "a known history

of widespread constitutional deprivations on the part of city

employees."[53]

Here, Glass alleges violations of his Fourth, Fifth, and

Fourteenth Amendment rights with regard to his "false arrest and

imprisonment" by Collier (Count One) and the "fabrication of

evidence" by Collier and Employee X (Count Two).  Compl. at 21-

22.  Because the Court may not impose vicarious liability under

a § 1983 action, Glass's claims against the County "hinge" on

his ability to show that Collier or Employee X violated his

constitutional rights.[54]   If Glass prevails on his claims against

---

[52] A municipal policy may consist of written ordinances and
regulations, or "certain affirmative decisions of individual
policymaking officials."  *Carter v. Morris*, 164 F.3d 215, 218
(4th Cir. 1999) (internal citations omitted).  Municipal custom
exists when "a particular practice is so persistent and
widespread and so permanent and well settled as to constitute a
custom or usage with the force of law."  *Id.*

[53] *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 411 (1997);
*Milligan v. City of Newport News*, 743 F.2d 227, 229-30 (4th Cir.
1984); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112,
127 (1988) (plurality opinion) (liability for municipal "custom"
prevents "egregious attempts by local governments to insulate
themselves from liability for unconstitutional policies," which
they have ratified *sub silentio*).

[54] *Dawson*, 896 F. Supp. at 540; *see also Brown v. Bailey*, No.
RDB-11-01901, 2012 WL 2188338, at *4 (D. Md. June 3, 2012); *Cole
v. Prince George's Cnty, Md.*, No. AW-10-70, 2010 WL 3169843, at
*4 (D. Md. Aug. 10, 2010).

Collier and Employee X, he must additionally establish that "the actions of the active Defendants subjecting him to [§] 1983 liability were proximately caused by a custom, practice or policy of an inactive Defendant"--the County.   *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991).

There are clear reasons for bifurcation.   For instance, evidence of the County's custom, practice, or policy is likely to reference earlier incidents of police misconduct, *see* Compl. ¶ 120, which could prejudice Collier and Employee X.   *Dawson*, 896 F. Supp. at 540.   Further, if a jury returns verdicts for Collier and Employee X, a trial against the County would be unnecessary.   *Id.*

"This Court has consistently held that in the context of [§] 1983 claims, bifurcation of the *Monell* supervisory claims from the individual claims is appropriate and often desirable." *Brown*, 2012 WL 2188338, at *4; *id.* (collecting cases). Bifurcation is warranted in this case.   In phase one, the jury will consider Glass's claims against Collier and Employee X (Counts One and Two) and the amount of any damages to which Glass may be entitled.   In phase two, the County's *Monell* liability (Count Four), if any, would be determined.

The Defendants' motion to bifurcate and partially stay discovery will be granted in part and denied in part.

## III. Conclusion

For the reasons stated above, Davis, Gilmer, Ryder, and Fraser's motion to dismiss or for summary judgment, construed as a motion to dismiss, will be granted; the Defendants' motion to strike will be denied; and the Defendants' motion to bifurcate and partially stay discovery will be granted in part and denied in part.

_____3/14/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge